UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAYLEE QUINONES,

Plaintiff,

v.

MONTEFIORE MEDICAL CENTER, and
WOODROW WHITAKER,

Defendants.

---

24 Civ. 1516 (DEH)

**MEMORANDUM
OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Raylee Quinones alleges that she suffered sex-based harassment and retaliation during the course of her employment as a housekeeper at Defendant Montefiore Medical Center. Montefiore moves for summary judgment, arguing, in part, that Plaintiff has failed to put forward any admissible evidence to support the timeliness of her discrimination claims or the veracity of her retaliation claims under state and federal law. The Court concludes that Plaintiff's testimony, nearly all of which is inadmissible hearsay and some of which contradicts Plaintiff's prior statements, is insufficient to establish a dispute of fact that would preclude summary judgment on her claims. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.

### BACKGROUND[1]

Montefiore Medical Center is a nonprofit medical center located in the Bronx, New York. Defs.' 56.1 Statement of Uncontested Facts ¶ 1, ECF No. 50 ("Defs.' 56.1 Stmnt."). The Environmental Services Department ("EVS"), which has more than 200 employees, is in charge

---

[1] The facts herein are taken directly from the Parties' Rule 56.1 statements and are undisputed unless stated otherwise.

of maintaining a clean and safe environment within all Montefiore facilities. *Id.* Plaintiff Raylee Quinones ("Plaintiff") was hired to work at Montefiore Medical Center as a part-time housekeeper in EVS. *Id.* ¶ 6. Individual Defendant Woodrow Whittaker[2] ("Whittaker") is an Operations Manager in EVS. *Id.* ¶ 2. In 2019, Montefiore promoted Plaintiff to fulltime Housekeeper in EVS and assigned Plaintiff to clean Floor 8 in the Medical Ambulatory Pavilion ("MAP") building. *Id.* ¶ 6. Housekeepers in EVS are responsible for cleaning the hospital premises, including, but not limited to, sweeping, mopping, dusting, and refilling supplies. *Id.* ¶ 3.

Herbert Leone, Abner Torres, and Carol Jimenez were all Housekeepers within EVS. *Id.* ¶ 14. Torres was a Lead Housekeeper. *Id.* Like general Housekeepers, Lead Housekeepers also clean the hospital and assist supervisors in ensuring Housekeepers have the supplies and equipment that they need to effectively get their job done; assist with checking in staff; convey directions from supervisors/management to Union staff; and assist in rounding, which means walking through the building to ensure work is getting done and to report back to supervisors any issues. *Id.* ¶ 4. Lead Housekeepers do not have any authority to discipline Housekeepers, or to carry out any form of discipline. *Id.* ¶ 5. Jimenez was assigned to clean MAP Floor 7, Leone was assigned to clean MAP Floor 3, and Plaintiff was assigned to clean MAP Floor 8. *Id.* ¶ 16. Torres worked in the MAP building as a Lead Housekeeper, and they all worked the evening shift. *Id.* As Plaintiff admits, Torres has never been a supervisor of Plaintiff or anyone else. *Id.* ¶ 17.

Leone and Plaintiff have been in a romantic relationship since 2017. *Id.* ¶ 18. In 2020, Leone and Plaintiff had a physical altercation at work. *Id.* ¶ 23. Plaintiff was physically injured during the incident. *Id.* Afterwards, Jimenez tried to calm Plaintiff down, and Torres drove

---

[2] Plaintiff voluntarily abandoned her claims against Defendant Whittaker. *See* Response in Opp'n to Mot. at 25, ECF No. 63.

2

Plaintiff home.  *Id.*  Plaintiff believes her coworker Torres disapproved of Plaintiff's relationship with Leone because of the age difference between Leone and Plaintiff, because of Leone's physical altercation with Plaintiff in 2020, and because Leone was married when they began dating. *Id.* ¶ 24.  Everyone in EVS, including Plaintiff's supervisors, knew Leone and Plaintiff were dating.  *Id.* ¶¶ 25-28.

Plaintiff, Torres, and Jimenez often socialized outside of work.  *Id.* ¶ 33.  Plaintiff and Jimenez were best friends during their employment together.  *Id.* ¶ 32.  The three of them exchanged friendly text messages for years from 2017-2022. *Id.* ¶ 34.  Plaintiff's relationship with Torres was never romantic.  *Id.* ¶ 36.  However, Plaintiff testified at her deposition that she believes Torres was attracted to her.  Pl.'s Resp. to Def.'s 56.1 Statement of Uncontested Facts ¶ 36, ECF No. 55 ("Pl. 56.1 Opp.").

On Thursday September 29, 2022, Whittaker and other supervisors met with Plaintiff about the cleanliness of her floor.  Defs.' 56.1 Stmnt. ¶ 38.  EVS was conducting an infectious control inspection and found deficiencies (i.e., dust, dirt, and grime) on Plaintiff's floor and asked Plaintiff to meet with them so that they could bring the deficiencies to her attention.  *Id.* ¶ 39.  Plaintiff disagreed that her floor had deficiencies.  *Id.*  Plaintiff believed that Torres told her supervisors that she was doing a bad job on her floor, which caused them to meet with her that day.  *Id.* ¶ 41. During the meeting, her supervisor, Servideo, mentioned the superior cleanliness of Torres' and Jimenez's floors.  *Id.* ¶ 44.  Plaintiff then reported that Torres cleans Jimenez's floor for her while she goes home without clocking out.  *Id.*  After Plaintiff accused Torres and Jimenez of stealing time in violation of Montefiore's policies, Whittaker confirmed with Plaintiff what she was reporting and informed his supervisor.  *Id.* ¶ 45.

After Plaintiff complained about Torres and Jimenez, Montefiore never assigned Torres to Plaintiff's floor as the Lead Housekeeper again, which pleased Plaintiff.  *Id.* ¶ 47.  Torres never

spoke to Plaintiff again; Jimenez, Torres, and Plaintiff never helped each other clean their respective floors again; Torres and Jimenez never exchanged text messages with Plaintiff again; and Plaintiff never socialized with Jimenez and Torres again. *Id.* Plaintiff alleges that she received a threatening phone call from Jimenez in response to reporting her for time theft. Pl. 56.1 Opp. ¶ 47. Plaintiff also alleges that Torres would stand by the time clock around the time that Plaintiff's shift would start, though this was within the scope of Torres's duties as Lead Housekeeper. Pl. 56.1 Opp. ¶ 47; Defs.' 56.1 Stmnt. ¶ 98. In her complaint to Montefiore, she stated that she could not hear the things that Torres said under his breath when Plaintiff would clock in. Defs.' 56.1 Stmnt. ¶¶ 47, 98; Pl.'s 56.1 Statement of Uncontested Facts ¶ 228, ECF No. 55 ("Add. Facts"); Decl. of Shalesia Sookra ("Sookra Decl."), Ex. I (Plaintiff's Jan. 29, 2024 email summarizing Plaintiff's complaint), ECF No. 48-9. However, at her deposition, Plaintiff testified that Torres said things like "dumb ass" and "stupid bitch." Pl. 56.1 Opp. ¶ 47.

Three days after Plaintiff's time theft complaint, Plaintiff sent an email on October 2, 2022, titled "Formal Complaint of Harassment." Defs.' 56.1 Stmnt. ¶ 61. Plaintiff reported that Torres had made a series of inappropriate comments to her over the years, including comments about Plaintiff's weight and sexual partners. *Id.* ¶ 62, 64-65. Plaintiff also reported that Torres would drop things on the floor and force Plaintiff to pick them up. *Id.* ¶ 66. Plaintiff also reported, "I have been quiet for 6 years because I've been scared of the retaliation because I know Abner Torres holds alot (sic) of power in my department." *Id.* ¶ 67.

On November 30, 2022, Plaintiff reported that Torres was making further comments to coworkers about Plaintiff's sexual behavior, alleging that Plaintiff slept with Torres and had an abortion. *Id.* ¶ 77. Plaintiff did not hear Torres make any of these comments, and there is no admissible evidence to support the fact that Torres made these statements. The coworker that Plaintiff alleges told her that Torres had made these statements denies doing so. *Id.* ¶¶ 78-79.

4

Montefiore conducted an investigation of Plaintiff's complaint and determined that it was unable to substantiate that Torres had made the comments that Plaintiff reported she had heard about from others, or any of the other items included in her complaint. *Id.* ¶ 83.

On or around September 7, 2023, Plaintiff complained to Whittaker that she saw Torres by the time clock when she clocked in on several occasions, which upset her. *Id.* ¶ 90. Plaintiff provided dates when this occurred and some of those dates were identified and reviewed on security footage. *Id.* ¶ 91. Surveillance footage from these dates does not show any interaction between Plaintiff and Torres, let alone Torres making comments to Plaintiff. *Id.* ¶¶ 93-97.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).[3] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373

---

[3] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586. The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)). The Court cannot rely on inadmissible hearsay in finding a dispute of fact. *See Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015), *aff'd sub nom.*, *Abdel-Karim v. Egyptair Holding Co.*, 649 F. App'x 5 (2d Cir. 2016).

"[I]n the rare circumstance where the plaintiff relies almost exclusively on her own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). At the same time, however, as the Second Circuit recently reiterated, a plaintiff's testimony, standing alone, may be independently sufficient to raise a genuine issue of material facts. *See Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 49 (2d Cir. 2025). While credibility assessments are typically the province of the jury, "a party's affidavit may not create an issue of fact by 'contradict[ing] the affiant's previous

6

deposition testimony.'" *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004) (quoting *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir. 1996)), *supplemented*, 108 F. App'x 10 (2d Cir. 2004). Nor can a party rely on their "testimony to raise a genuine issue of fact" if "that testimony is inescapably and unequivocally contradicted by [his] own sworn and written statements" and where he "offers no plausible explanation for the multitude of contradictions." *Bentley*, 935 F.3d at 88; *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998). However, the threshold for a Court to disregard a Plaintiff's testimony is quite high: the Court must find the record contradictions "inescapable and unequivocal" to find that her testimony raised only "a sham issue of fact." *Fosamax Prods. Liability Litig.*, 707 F.3d 189, 194 (2d Cir. 2013).

## DISCUSSION

Defendants move for summary judgment as to all of Plaintiff's claims under federal and state law. Plaintiff relies almost entirely on her own testimony to combat Defendants' motion, much of which is inadmissible hearsay and contradicts her prior sworn statements. The Court concludes that there is no genuine dispute of fact that Plaintiff's claims under both Title VII and the NYLL are untimely. Nor is there any admissible evidence that would establish a genuine dispute regarding whether Plaintiff suffered any retaliatory action for reporting harassment by Torres. Accordingly, Defendants' Motion is **GRANTED**.

### I.    Timeliness

As discussed above, Plaintiff alleges numerous instances of sex-based harassment during the course of her employment, including frequent discussion of graphic sexual exploits in the office. However, both Title VII and the state law have statutes of limitations. "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free*

7

*Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015).  But "[u]nder the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (citation and quotation marks omitted).  However, "[t]o bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period," *id.*—i.e., for federal claims, within 300 days of the filing of an EEOC charge.  And for state law claims in New York, the statute of limitations is three years.  *Bermudez v. City of New York,* 783 F. Supp. 2d 560, 612 (S.D.N.Y. 2011) (dismissing claims because no act of harassment fell within the three-year statute of limitations under state and city law).

Plaintiff filed her EEOC complaint on July 26, 2023, and this case on February 28, 2024. Defs.' 56.1 Stmnt. ¶ 133; Compl. 3, ECF No. 1.  For Plaintiff's Title VII hostile work environment claim to be timely, she must allege harassing conduct that occurred on or after September 29, 2022, which is within 300 days prior to her filing her Charge.  For the state claims, she must allege harassment after February 28, 2021.  While Plaintiff does allege from first-hand knowledge several despicable statements from Torres, none of these alleged statements occurred after February 2021. *See* Response in Opp'n to Mot. at 6-7, 11, ECF No. 63.  To the extent Plaintiff alleges harassment within the statute of limitations periods, the only evidence in the record is hearsay (or even hearsay within hearsay), and/or Plaintiff's self-serving, contradictory testimony—which is insufficient to survive summary judgment.  Much of Plaintiff's allegations describe what coworkers allegedly told her Torres said, and the only coworker to have been asked about Plaintiff's allegations denies that Torres ever made those statements.  Defs.' 56.1 Stmnt. ¶¶ 77-79.  Plaintiff's own testimony

8

about what others told her what Torres said is classic hearsay; it cannot be offered for the truth that Torres said something. *See Fleming v. MaxMara, USA, Inc.*, 644 F. Supp. 2d 247, 259 n.9 (E.D.N.Y. 2009) (holding that statement as retold by coworker was hearsay). And a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment ... absent a showing that admissible evidence will be available at trial." *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015) (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)), *aff'd sub nom., Abdel-Karim v. Egyptair Holding Co.*, 649 F. App'x 5 (2d Cir. 2016). Plaintiff has made no such showing here, as no coworker has substantiated her complaints in this regard. *Cf. Russo v. Estée Lauder Corp.*, 856 F. Supp. 2d 437, 444 (E.D.N.Y. 2012) (striking portions of the plaintiff's 56.1 statement because they were unsupported by the record and failed to controvert the defendant's assertions); *Simmons v. Woodycrest Ctr. For Human Dev., Inc.*, No. 10 Civ. 5193, 2011 WL 855942, at *1 n.1 (S.D.N.Y. Mar. 11, 2011) (disregarding plaintiff's statement of facts completely because "Plaintiff's 56.1 Statement relies in significant part on gross distortions of the summary judgment record. Indeed, many of the contentions set forth in Plaintiff's 56.1 Statement are directly contradicted by plaintiff's own deposition testimony.").

To the extent Plaintiff relies on Torres's alleged statements made to her near the clock, Plaintiff's testimony contradicts the complaint she filed with her supervisor in which she stated she could not hear what Torres mumbled under his breath. Defs.' 56.1 Stmnt. ¶¶ 47, 98; Add. Facts ¶ 228; Sookra Decl., Ex. I. The Court concludes that such contradictory testimony, by itself, is insufficient to establish a material dispute of fact regarding any alleged discriminatory conduct within the limitations period. *Manungo v. Centers Health Care IPA, LLC*, No. 24 Civ. 1938, 2026 WL 446234, at *7 (S.D.N.Y. Feb. 17, 2026) ("Plaintiff's self-serving deposition testimony— contradicted by her own other statements and unsupported by anything else in the record—is not

a sufficient basis to create a genuine dispute of fact as to pretext."). Thus, even if the Court were to find the continuing violation doctrine applicable, Plaintiff's claims fail as untimely. *See Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 359 (S.D.N.Y. 2016). As a result, Defendants are entitled to summary judgment on these claims.

## II.    Retaliation

To establish a prima facie retaliation claim under Title VII and NYSHRL, a plaintiff must show, "that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). The elements of retaliation under the NYCHRL "differ only in that the plaintiff need not prove any adverse employment action; instead, she must prove that the conduct would be reasonably likely to deter a person from engaging in protected activity." *Owens v. City of N.Y. Dep't of Educ.*, No. 17 Civ. 519, 2021 WL 3862974 (S.D.N.Y. Aug. 30, 2021). Once a plaintiff has established a prima facie showing of retaliation, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 845 (citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)). If the employer articulates a non-retaliatory reason for the adverse employment action, the plaintiff must then show that the defendant's proffered non-retaliatory reason is mere pretext. *Id.*

Plaintiff's retaliation claims fail because it is undisputed that she suffered no adverse employment action nor any conduct that would be reasonably likely to deter her from reporting sex-based harassment. It is undisputed that Plaintiff was never disciplined, suspended, demoted, terminated, or given a negative evaluation subsequent to the filing of her report against Torres. Defs.' 56.1 Stmnt. ¶ 8. Thus, there is no formal disciplinary action that could support a retaliation

10

claim. *See Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (concluding that "notice[s] of discipline for misconduct and incompetence," "counseling memo[s]," and "negative job evaluations" "do not establish an adverse employment action for purposes of retaliation" claim under Title VII); *see also, e.g., Brown v. Am. Golf Corp.*, 99 F. App'x 341, 343 (2d Cir. 2004) ("We conclude that being instructed to follow the requirements of the Performance Improvement Plan did not constitute an adverse employment action [under Title VII].").

Plaintiff also fails to establish a dispute of fact regarding liability for Torres's alleged statements to coworkers—the only other basis upon which Plaintiff argues she can establish a retaliation claim. "Under New York law, to hold an employer liable for the acts of its employees, a plaintiff must prove that her employer became a party to [the discrimination] by encouraging, condoning, or approving it." *Gibson v. Crucible Materials Corp.*, 290 F. Supp. 2d 292, 299-300 (N.D.N.Y. 2003). However, as described above, the Court need not inquire into whether Montefiore encouraged or condoned of Torres's alleged behavior, as there is no admissible evidence that supports the fact that Torres made any harassing or retaliatory statements following Plaintiff's report of sex-based harassment. *See* Response in Opp'n. to Mot. at 24 ("After Plaintiff complained to HR on October 2, 2022, Torres made a plethora of demeaning, gender-based comments regarding Plaintiff *to coworkers*.") (emphasis added); *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 259 n.9 (E.D.N.Y. 2009) (although underlying statement was not hearsay, statement as retold by coworker was hearsay subject to no hearsay exceptions). As discussed, the Court cannot find a genuine dispute of fact based only on Plaintiff's inadmissible and contradictory deposition testimony. Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

## CONCLUSION

For the reasons discussed herein, Defendants' Motion for Summary Judgement is

**GRANTED**.

The Clerk of Court is respectfully directed to terminate ECF No. 45, and to close this case.

SO ORDERED.

Dated: June 25, 2026
New York, New York

DALE E. HO
United States District Judge

12